IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EDUARDO REYES SILVA, and ESTRELLA GISELLE RODRIGUEZ OLVERA, | **4:23CV3038** |
| Plaintiffs, | |
| vs. | **MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS** |
| LOREN K. MILLER, Director, Nebraska Service Center, U.S. Citizenship and Immigration Services, in his official capacity as well as his successors and assigns; ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security, in his official capacity as well as his successors and assigns; UR MENDOZA JADDOU, Director, U.S. Citizenship and Immigration Services, in her official capacity as well as her successor and assigns; ANTONY J. BLINKEN, Secretary of State, U.S. Department of State, in his official capacity as well as his successors and assigns; PHILLIP SLATTERY, Director, National Visa Center, U.S. Department of State, in his official capacity as well as his successors and assigns; and RICHARD C. VISEK, Acting Legal Adviser, U.S. Department of State, in his official capacity as well as his successors and assigns, | |
| Defendants. | |

In this case, Plaintiffs who are husband and wife assert claims pursuant to the Administrative Procedures Act (APA) and seek a writ of mandamus under 28 U.S.C. § 1361 based on allegations that government action on the processing of an I-601A Application for Provisional Unlawful Presence Waiver (I-601A application), and scheduling and conducting of a DS-260 immigrant visa interview for Plaintiff-Wife has been unreasonably delayed. Filing 1 at 1 (¶ 1). Plaintiffs seek an Order directing officials of the U.S Citizenship and Immigration Services

1

(USCIS) and the U.S. Department of State (DOS) to complete all necessary steps to complete the adjudication of Plaintiff-Wife's I-601A Application and to schedule and conduct her DS-260 immigrant visa interview within twenty-one (21) days from the entry of such Order. Filing 1 at 3 (¶ 9). This case is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Filing 20. For the reasons stated below, Defendants' Motion to Dismiss is granted.

## I.   INTRODUCTION

On a Rule 12(b)(6) motion to dismiss for failure to state a claim and a Rule 12(b)(1) "facial" challenge to subject matter jurisdiction, which requires application of Rule 12(b)(6) "safeguards," the factual background is drawn from allegations in the Complaint taken as true. *Bauer v. AGA Serv. Co*., 25 F.4th 587, 589 (8th Cir. 2022) (explaining that on a Rule 12(b)(6) motion, a court must accept facts alleged in the complaint as true); *Croyle by & through Croyle v. United States*, 908 F.3d 377, 380–81 (8th Cir. 2018) (distinguishing between "facial" and "factual" challenges under Rule 12(b)(1) on the basis that Rule 12(b)(6) "safeguards" apply to the former). Thus, the following summary is drawn from the Complaint.

Plaintiff Eduardo Reyes Silva is apparently lawfully in the United States but plaintiff Estrella Giselle Rodriguez Olvera, his wife, is not. This appears to be so because on August 9, 2018, Reyes Silva filed an I-130 petition with USCIS sponsoring Olvera for lawful permanent residence in the United States. Filing 1 at 7 (¶ 26). USCIS approved the I-130 application on August 5, 2019. Filing 1 at 7 (¶ 26). On November 9, 2020, Olvera filed an I-601A Application for Provisional Unlawful Presence Waiver which remains pending at USCIS's Nebraska Service Center. Filing 1 at 2 (¶¶ 1, 3, 27). Olvera needs an approved I-601A application before the National Visa Center will schedule her DS-260 immigrant visa interview at the U.S. Consulate in

Ciudad Juarez, Mexico. Filing 1 at 2 (¶ 2). At the time the Complaint was filed in March 2023, Olvera's I-601A Application had been pending for approximately twenty-seven months. Filing 1 at 8 (¶ 30). Plaintiffs allege that during the period since Olvera filed her I-601A Application they "have suffered multiple hardships," owing to Olvera's inability to become a lawful permanent resident and to reside in that status in the United States with her husband. Filing 1 at 3 (¶ 8). Slightly more specifically, they allege that the unreasonable delay in adjudicating the I-601A Application and the scheduling and conducting of the DS-260 immigrant visa interview "have caused, and are causing, Plaintiffs ongoing and substantial injuries personally and emotionally," Filing 1 at 10 (¶ 44), as well as "stress and financial concerns." Filing 1 at 12 (¶ 57).

Three Defendants named in Plaintiffs' Complaint are associated with USCIS. They are Alejandro Mayorkas, the Secretary of the Department of Homeland Security (DHS) including its sub-agency USCIS; Ur Mendoza Jaddou, the Director of USCIS; and Loren K. Miller, the Director of the USCIS Nebraska Service Center. Filing 1 at 5–6 (¶¶ 16, 18, 19). The Court will refer to these Defendants collectively as the USCIS Defendants. Three Defendants named in Plaintiffs' Complaint are associated with the DOS. They are Antony J. Blinken, the Secretary of State; Phillip Slattery, an officer of the DOS responsible for the operation of the DOS's National Visa Center; and Richard C. Visek, an officer of the DOS and its Acting Legal Adviser. Filing 1 at 5–6 (¶¶ 17, 20, 21). The Court will refer to these Defendants collectively as the DOS Defendants.[1]

In their Complaint for Declaratory and Injunctive Relief and for Writ of Mandamus, Filing 1, Plaintiffs assert two claims for relief. Count I alleges violations by USCIS and the DOS

---

[1] Defendants Mayorkas, Jaddou, Miller, and Blinken are sued "in [their] official capacity only." Filing 1 at 5–6 (¶¶ 16–19). Plaintiffs did not allege the capacity in which defendants Slattery and Visek are being sued.

of 5 U.S.C. § 555(b) of the APA, which Plaintiffs allege "requires agencies to conclude matters presented to them 'within a reasonable time.'" Filing 1 at 9 (¶ 36) (quoting 5 U.S.C. § 555(b)). It also alleges "[a] court may 'compel agency action unlawfully withheld or unreasonably delayed'" pursuant to 5 U.S.C. § 706(1). Filing 1 at 9 (¶ 37) (quoting 5 U.S.C. § 706(1)). Finally, for present purposes, it alleges, "Plaintiffs challenge only the reasonableness of Defendants' delays or inaction in the adjudication of Plaintiff-wife's I-601A application and scheduling and conducting of Plaintiff-wife's DS-260 immigrant visa interview, not the grant or denial of this filing." Filing 1 at 9 (¶ 40). Count II seeks a writ of mandamus under 28 U.S.C. § 1361 to compel officers of USCIS and the DOS "to perform a duty owed to [Plaintiffs]." Filing 1 at 10 (¶ 46). Specifically, "Plaintiffs ask this Court to compel Defendants to perform their duties and complete the background checks for, and adjudication of, Plaintiff-wife's I-601A application and schedule and conduct Plaintiff-wife's DS-260 immigrant visa interview." Filing 1 at 11–12 (¶ 55).

Defendants filed their Motion to Dismiss as to both counts. Filing 20. In their Brief in Support of Their Motion to Dismiss, Defendants assert that Plaintiffs "seek a judicial fast pass and request this Court to allow them to skip the line by compelling USCIS to immediately adjudicate the I-601A waiver and, once done, compelling the Department to immediately schedule and conduct the consular interview." Filing 22 at 2. Defendants assert that Plaintiffs do not meet their burden of establishing jurisdiction and that even if they had they cannot overcome their failure to state a claim. Filing 22 at 2. Plaintiffs dispute Defendants' characterization of their Complaint as an attempt to "skip the line" or "seek a judicial fast pass" because they assert that they have followed the procedure required by law and have waited an unreasonable amount of time. Filing 24 at 2. They assert that they have a right to protect their individual rights and

4

interests. Filing 24 at 2. Plaintiffs also assert that the Court has subject matter jurisdiction over

their claims and that they have adequately pleaded those claims. Filing 24 at 3.

## II. LEGAL ANALYSIS

### A. Applicable Standards for Dismissal

Defendants seek dismissal pursuant to Rule 12(b)(1) for lack of subject matter

jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim. The Court will set out both

sets of standards.

#### 1.   Lack of Subject Matter Jurisdiction Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion

to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The Eighth Circuit

Court of Appeals has explained that on a Rule 12(b)(1) motion,

> The plaintiff bears "the burden of proving the existence of subject matter
> jurisdiction," and we may look at materials "outside the pleadings" in conducting
> our review. [*Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en
> banc)] (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th
> Cir. 2005)). Because of the "unique nature of the jurisdictional question," *Osborn
> v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted), it is the
> court's duty to "decide the jurisdictional issue, not simply rule that there is or is
> not enough evidence to have a trial on the issue," *id.* at 730. As such, if the court's
> inquiry extends beyond the pleadings, it is not necessary to apply Rule 56
> summary judgment standards. *Id.* at 729. Rather, the court may receive evidence
> via "any rational mode of inquiry," and the parties may "request an evidentiary
> hearing." *Id.* at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th
> Cir. 1986)). Ultimately, the court must rule upon "the jurisdictional issue [unless
> it] is 'so bound up with the merits that a full trial on the merits may be necessary
> to resolve the issue.'" *Id.* (quoting *Crawford*, 796 F.2d at 928).

*Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019); *Am. Fam. Mut. Ins. Co. v. Vein

Centers for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019) ("[A] motion to dismiss for

lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the

court's jurisdiction, and courts may look to evidence outside the pleadings and make factual

findings." (citing *Davis v. Anthony, Inc*., 886 F.3d 674, 679 (8th Cir. 2018)).

The *Buckler* decision suggests that a challenge to subject matter jurisdiction pursuant to

Rule 12(b)(1) is always "factual," but "facial" challenges are also possible:

> In deciding a motion under Rule 12(b)(1), the district court must distinguish
> between a facial attack—where it looks only to the face of the pleadings—and
> a factual attack—where it may consider matters outside the pleadings. *Osborn v.
> United States*, 918 F.2d 724, 729 n.6 (8th Cir.1990). In a factual attack, the "non-
> moving party does not have the benefit of 12(b)(6) safeguards." *Id*. If the
> jurisdictional issue is "bound up" with the merits of the case, the district court
> may "decide whether to evaluate the evidence under the summary judgment
> standard." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir.2018). This court
> is bound by the district court's characterization of the Rule 12(b)(1) motion.
> *Carlsen v. GameStop, Inc*., 833 F.3d 903, 908 (8th Cir.2016) ("The method in
> which the district court resolves a Rule 12(b)(1) motion—that is, whether the
> district court treats the motion as a facial attack or a factual attack—obliges us to
> follow the same approach.").

*Croyle by & through Croyle v. United States*, 908 F.3d 377, 380–81 (8th Cir. 2018).

The "Rule 12(b)(6) safeguards" applicable in a Rule 12(b)(1) "facial" challenge to

subject matter jurisdiction necessarily include acceptance of factual allegations in the Complaint

as true. *See Bauer*, 25 F.4th at 589 (explaining that on a Rule 12(b)(6) motion, a court must

accept facts alleged in the complaint as true). The "Rule 12(b)(6) safeguards" do not require a

court to accept all of a plaintiff's allegations as true, however. Courts still "giv[e] no effect to

conclusory allegations of law," and "[t]he plaintiff must assert facts that affirmatively and

plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather

than facts that are merely consistent with such a right." *Stalley v. Cath. Health Initiatives*, 509

F.3d 517, 521 (8th Cir. 2007). Thus, "[i]n a facial attack, 'a defendant asserts that the complaint

fails to allege sufficient facts to support subject matter jurisdiction.'" *Davis v. Anthony, Inc*., 886

F.3d 674, 679 (8th Cir. 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)).

In their Motion to Dismiss, Defendants state, "In the present case, USCIS bring[s] a facial attack against Plaintiffs' Complaint, whereas the Department brings a factual attack." Filing 22 at 17. Nevertheless, the Court concludes that both groups of Defendants are entitled to dismissal based on a "facial" attack on subject matter jurisdiction because the Complaint demonstrates on its face that the facts alleged do not support subject matter jurisdiction. *See Coyle*, 908 F.3d at 380–81 (explaining that the appellate court "is bound by the district court's characterization of the Rule 12(b)(1) motion" as either a factual or facial attack).

### 2.   *Failure to State a Claim Standards*

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585,

594 (8th Cir. 2009)). Specifically, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

As noted above, Rule 12(b)(6) "safeguards" require a court to "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer*, 25 F.4th at 589 (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. See, e.g., *Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No.

8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff fails to state a claim that is legally cognizable as opposed to factually implausible.

The Court will apply the appropriate standards, either pursuant to Rule 12(b)(1) or Rule 12(b)(6), in turn to the claims against the USCIS Defendants and the DOS Defendants.

### B.  The Claims Against the USCIS Defendants

1.   *The APA Claim*

a.  The Parties' Arguments

The USCIS Defendants assert that this Court does not have jurisdiction to review Plaintiffs' claims against USCIS concerning Olvera's I-601A waiver because Congress has specifically precluded judicial review of such waivers in 8 U.S.C. § 1182(a)(9)(B)(v), a provision of the Immigration and Nationality Act (INA). Filing 22 at 18. They point out that this statute grants the agency "sole discretion to waive" an immigrant's unlawful presence in the United States and also precludes judicial review of "a decision or action" by USCIS regarding a waiver of unlawful presence. Filing 22 at 18. The USCIS Defendants then point out that the APA in turn precludes judicial review where "statutes preclude judicial review" and where agency decisions are "committed to agency discretion." 5 U.S.C. § 701(a)(1). Filing 22 at 19. Plaintiffs assert that Defendants' reading of § 1182(a)(9)(B)(v) is overbroad. Filing 24 at 5. They argue that § 1182(a)(9)(B)(v) does not preclude jurisdiction over an "unreasonable delay" claim because unreasonable delay is not an agency decision or action. Filing 24 at 6.

9

b.  The Applicable Statutes

The Court concludes that statutory interpretation is dispositive of Plaintiffs' APA claim against USCIS. Because the language of both the pertinent provisions of the APA and the INA is plain and unambiguous, the Court's analysis begins and ends there. *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (internal quotation marks and citations omitted)).

First, the basis for Plaintiffs' claim under the APA is the following provision in Chapter 7 providing for judicial review of certain agency actions:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>
> **(1)** compel agency action unlawfully withheld or unreasonably delayed[.]

5 U.S.C. § 706(1). In a different chapter of the APA—Chapter 5 concerning "administrative procedure"—the APA states, "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). However, there is an exception to judicial review stated in Chapter 7 of the APA:

> **(a)** This chapter applies, according to the provisions thereof, except to the extent that--
>
> **(1)** statutes preclude judicial review; or
>
> **(2)** agency action is committed to agency discretion by law.

5 U.S.C. § 701(a)(1)–(2). As the Supreme Court has explained, the APA "establishes a basic presumption of judicial review," but judicial review is subject to the two exceptions in § 701(a).

10

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (quotation marks and citation omitted). "To honor the presumption of review," the Supreme Court has "read the exception in § 701(a)(2) quite narrowly, confining it to those rare administrative decisions traditionally left to agency discretion." *Id.* (cleaned up). On the other hand, the Supreme Court has also observed, "The presumption of judicial review is, after all, a presumption, and like all presumptions used in interpreting statutes, may be overcome by, *inter alia*, specific language or specific legislative history that is a reliable indicator of congressional intent, or a specific congressional intent to preclude judicial review that is fairly discernible in the detail of the legislative scheme." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670–73 (1986) (internal quotation marks and citations omitted). Thus, "[t]o preclude judicial review [under § 701(a)(1)], a statute must be specific in withholding such review [or] must upon its face give clear and convincing evidence of an intent to withhold it." *Id.* at 671.

Turning to the key provision of the INA, 8 U.S.C. § 1182 states the following:

(a) Classes of aliens ineligible for visas or admission

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

* * *

(9) Aliens previously removed

* * *

(B) Aliens unlawfully present

(i) In general

Any alien (other than an alien lawfully admitted for permanent residence) who--

(**I**) was unlawfully present in the United States for a period of more than 180 days but less than 1 year, voluntarily departed the United States (whether or not

11

pursuant to section 1254a(e)2 of this title) prior to the commencement of proceedings under section 1225(b)(1) of this title or section 1229a of this title, and again seeks admission within 3 years of the date of such alien's departure or removal, or

**(II)** has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States,

is inadmissible.

* * *

(v) Waiver

The Attorney General has sole discretion to waive clause (i) in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause.

8 U.S.C. § 1182(a)(9)(B)(v).[2]

> c. The "Sole Discretion" Clause of § 1182(a)(9)(B)(v) Does Not Preclude Judicial Review of an Unreasonable Delay

The first sentence of § 1182(a)(9)(B)(v) plainly and clearly provides the agency with "sole discretion to waive clause (i)." Thus, it precludes judicial review of actions specified pursuant to 5 U.S.C. § 701(a)(2) as "agency action . . . committed to agency discretion by law." The language of § 1182(a)(9)(B)(v) itself limits the scope of the agency's "sole discretion," however. It is only "sole discretion to waive clause (i)" and only "if it is established to the satisfaction of the [agency] that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." 8 U.S.C.

---

[2] As Defendants correctly point out, in 2002, Congress transferred enforcement of immigration laws from the Attorney General to the Secretary of Homeland Security under the Homeland Security Act of 2002, Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2178 (2002).

§ 1182(a)(9)(B)(v) (first sentence). Thus, by its plain terms, the "sole discretion" clause applies only to the agency's final decision on an application for a waiver. Nothing in the language of this sentence of § 1182(a)(9)(B)(v) suggests an intent to bar judicial review of an unreasonable delay in making a final decision.

      d.   The "Jurisdiction-Stripping" Clause of § 1182(a)(9)(B)(v)
           Does Preclude Judicial Review of an Unreasonable Delay

The effect of the second sentence of § 1182(a)(9)(B)(v) is quite different, however. It is plainly a "jurisdiction-stripping" provision within the scope of 5 U.S.C. § 701(a)(1) because it expressly states, "No court shall have jurisdiction to review a decision or action by the [agency] regarding a waiver under this clause." 8 U.S.C. § 1182(a)(9)(B)(v) (second sentence); *see also* 5 U.S.C. § 701(a)(1) (providing for judicial review "except to the extent that . . . (1) statutes preclude judicial review"). The intent to preclude judicial review could not be clearer from this sentence of § 1182(a)(9)(B)(v). *See Bowen*, 476 U.S. at 671 (explaining what statutes fall within § 701(a)(1)). To put it another way, the statute is "specific in withholding such review" and "upon its face give[s] clear and convincing evidence of an intent to withhold [review]." *Id.*

The question then becomes the extent of agency decisions or actions for which jurisdiction for judicial review is stripped. As both parties point out, 5 U.S.C. § 551(13) defines "agency action" as including "failure to act." Defendants contend that means the jurisdiction-stripping language in § 1182(a)(9)(B)(v) necessarily strips jurisdiction to review a claim of "unreasonable delay," which is a "failure to act." The Court finds reliance on a statutory definition of "agency action" in 5 U.S.C. § 551(13), which is in a different chapter of the APA from the provisions concerning judicial review, is an unsatisfactory guide to the meaning of

"action by the [agency]" in the second sentence of § 1182(a)(9)(B)(v), a statutory provision in a different act, the INA.

Instead, as the Court pointed out above, the language of § 1182(a)(9)(B)(v) is of paramount importance. See *BedRoc Ltd.*, 541 U.S. at 183. Again, the part of the provision that is jurisdiction-stripping states, "No court shall have jurisdiction to review a decision or action by the [agency] regarding a waiver under this clause." 8 U.S.C. § 1182(a)(9)(B)(v). This sentence plainly refers to an "action" as something distinct or different from a "decision," or there would have been no need to include both terms. An "action" does not plainly involve a "decision"; rather, its plain meaning here is "a deliberative or authorized proceeding." Unabridged Merriam-Webster Dictionary On-line, https://unabridged.merriam-webster.com/unabridged/action. Also, the Supreme Court stated that "regarding" in a different jurisdiction-stripping statute under the INA has a "broadening effect." See *Patel v. Garland*, 596 U.S. 328, 339 (2022) (interpreting an immigrant removal statute, 8 U.S.C. § 1252(a)(2)(B)(i), which states in part, "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title," and observing that "the use of 'regarding' in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752, 1760 (2018), and also citing Webster's Third New International Dictionary, at 1911, defining "regarding" as "with respect to" or "concerning")). The Court is less suspicious of relying on this statement in *Patel* than my colleague was in *Beltran v. Miller*, Case No. 4:23cv3053, ECF #26 at 9, because the Court notes that the Supreme Court relied on the plain meaning of the word "regarding." *Patel*, 596 U.S. at 339 (citing the dictionary definition). Consequently, an "action by the [agency] regarding a waiver under this clause," 8 U.S.C.

§ 1182(a)(9)(B)(v), encompasses the proceedings concerning a waiver. To put it another way, it strips the courts of jurisdiction to review how the agency processes a waiver.

My colleague cogently observed that the issue presented in *Beltran*, as in this case, pertains to how the USCIS prioritizes and adjudicates I-601A applications over time—not whether USCIS can fully withhold adjudication of waiver applications. *See Beltran*, Case No. 4:23cv3053, ECF #26 at 11. There are no allegations in the Complaint in this case that USCIS is failing or refusing to adjudicate any I-601A applications at all or failing or refusing to adjudicate Plaintiffs' application in particular. The allegations are simply that Plaintiffs believe it is taking too long to get their I-601A application adjudicated. *See, e.g.,* Filing 1 at 2 (¶ 1, ¶ 3) (unreasonably delayed government action has forced Plaintiffs to wait since November 9, 2020), 7–8 (¶ 28) (reiterating the length of the wait), 8 (¶ 30 (reiterating the delay). At most, such allegations are consistent with a failure to act but even applying "Rule 12(b)(6) safeguards," that is not enough. *See Christopherson*, 33 F.4th at 499 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility [under Rule 12(b)(6)]." (internal quotation marks and citations omitted)); *Stalley,* 509 F.3d at 521 (explaining that on a Rule 12(b)(1) facial challenge, courts "giv[e] no effect to conclusory allegations of law," and "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right."). In this Court's view, the jurisdiction-stripping language in the second sentence of § 1182(a)(9)(B)(v) expressly strips the Court of jurisdiction to review how USCIS is prioritizing its work—whether to do one thing at a particular pace instead of another thing or its choice to consider applications in the order submitted—as that is an "action by the [agency] regarding a waiver under this clause." *Cf.*

15

*Beltran*, Case No. 4:213cv3053, ECF #16 at 12 (describing this bar as a discretionary decision insulated from judicial review).

Plaintiffs also allege that when they filed their Complaint, they had already waited 27 months instead of the six months that 8 U.S.C. § 1571(b) stated was the "sense of Congress" for how long processing an immigration benefit application should take. *See, e.g.,* Filing 1 at 3 (¶ 4) (relying on 8 U.S.C. § 1571(b)); Filing 1 at 11 (¶ 50) (same). Plaintiffs cannot assert—and to their credit have not asserted—that 8 U.S.C. § 1571(b) sets a deadline of 180 days for adjudication of their I-601A Application, despite alleging that § 1571(b) demonstrates that a "reasonable time period for Defendants to schedule and complete the adjudications of I-601A applications and DS-260 immigrant visa applications is within 180 days of filing." Filing 1 at 9 (¶ 41) (citing § 1571). Plaintiffs concede, "Defendants are correct that the language of 8 U.S.C. § 1571(b) is not binding." Filing 24 at 10. A plausible inference from the allegation that the hortatory timeframe in § 1571(b) has not been met is that a backlog of such applications—and specifically a backlog of I-601A applications—is preventing more prompt adjudications, while an inference of failure or refusal to act is no more than consistent with this allegation. *See Christopherson*, 33 F.4th at 499 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility [under Rule 12(b)(6)]." (internal quotation marks and citations omitted)); *Stalley*, 509 F.3d at 521 (explaining that on a Rule 12(b)(1) facial challenge, courts "giv[e] no effect to conclusory allegations of law," and "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.").

Thus, the Court lacks jurisdiction over Plaintiff's APA claim against the USCIS Defendants under the jurisdiction-stripping language in § 1182(a)(9)(B)(v). Defendants' Motion is granted as to lack of subject matter jurisdiction over Count I of the Complaint, and Count I is dismissed.

      2.    *The Mandamus Claim*

      a.  The Parties' Arguments

As to Plaintiffs' claim for a writ of mandamus in Count II, the USCIS Defendants assert that Plaintiffs' situation is not extraordinary as required for a writ of mandamus to issue. Filing 22 at 30. They assert that, even though the APA claim in Count I has no merit, Plaintiffs' mandamus claim in Count II seeks the same remedy. Filing 22 at 30. The USCIS Defendants contend that the existence of this APA remedy makes mandamus relief unavailable, even if the APA claim would ultimately be unsuccessful. Filing 22 at 31. Consequently, they assert that dismissal of Plaintiffs' mandamus claim against them is proper pursuant to Rule 12(b)(6). Filing 22 at 32. Plaintiffs counter that if the APA claim cannot provide a remedy, then they have no adequate alternative remedy, and a writ of mandamus is appropriate. Filing 24 at 14. They contend further that while a writ of mandamus is an extraordinary remedy, it is appropriate in their extraordinary circumstances where they have waited over 31.5 months with no action. Filing 24 at 14.

      b.  Applicable Standards

The mandamus statute provides, "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The issuance of a writ of mandamus is a drastic remedy to be invoked only in extraordinary situations." *In re*

17

*SDDS, Inc*., 97 F.3d 1030, 1034 (8th Cir. 1996) (internal quotation marks and citation omitted).

As the Eighth Circuit Court of Appeals has explained,

> Mandamus may issue under § 1361 against an officer of the United States only in extraordinary situations and when the plaintiff can establish (1) "a clear and indisputable right to the relief sought," (2) the state officer "has a nondiscretionary duty to honor that right," and (3) there is "no other adequate remedy." *Castillo v. Ridge*, 445 F.3d 1057, 1060–61 (8th Cir.2006). "In order for mandamus to lie[,] the duty owed to the plaintiff must be ministerial and a positive command so plainly prescribed as to be free from doubt." *Keeny v. Sec'y of the Army*, 437 F.2d 1151, 1152 (8th Cir.1971) (internal quotation omitted).

*Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016).

> c.   Plaintiffs' Mandamus Claim Against the USCIS Defendants Is Not Cognizable

Plaintiffs' mandamus claim is subject to dismissal pursuant to Rule 12(b)(6). First, Plaintiffs have not alleged an extraordinary situation that would warrant such a drastic remedy. *Mitchael*, 809 F.3d at 1054; *In re SDDS, Inc.*, 97 F.3d at 1034. Again, there are no allegations in the Complaint that USCIS is failing to adjudicate any I-601A applications at all or failing to adjudicate Plaintiffs' application in particular. Rather, like many (potentially tens of thousands) of other I-601A applicants, Plaintiffs find themselves waiting a long time for their turn in line— admittedly through no fault of their own but also with no allegation of a refusal to act by the USCIS Defendants. *See generally* Filing 1.

Furthermore, even assuming that Plaintiffs have "a clear and indisputable right to the relief sought," where that relief is adjudication of their I-601A Application, and even assuming that the USCIS Defendants "ha[ve] a nondiscretionary duty to honor that right," *see Matchael*, 809 F.3d at 1054 (first two numbered requirements for a writ of mandamus), Plaintiffs' mandamus claim still fails. A duty to "adjudicate" is the opposite of a "ministerial" duty, as required for mandamus relief. *Id.* (explaining the "nondiscretionary duty" element requires that

18

"the duty owed to the plaintiff must be ministerial and a positive command so plainly prescribed as to be free from doubt" (internal quotation marks and citation omitted)). "Adjudicate" is defined as "To rule on judicially." Black's Law Dictionary (11th ed.), 52. In contrast, "ministerial" is defined as "Of, relating to, or involving an act that involves obedience to instructions or laws instead of discretion, judgment, or skill." Black's Law Dictionary at 1192.

Furthermore, even if the obligation to adjudicate an I-601A application could somehow be construed to be "ministerial," there is no duty to adjudicate such an application within any timeframe that is set out as a "positive command so plainly prescribed as to be free from doubt." *Matchael*, 809 F.3d at 1054. Plaintiffs assert that 5 U.S.C. § 555(b) "imposes a non-discretionary duty to adjudicate applications in a reasonable time." Filing 24 at 7. Section 555(b) states in pertinent part, "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Adjudication "within a reasonable time" is not a "positive command so plainly prescribed as to be free from doubt" as to the time to complete the adjudication. *See Matchael*, 809 F.3d at 1054. The time is further modified by "due regard for the convenience and necessity of the parties or their representatives." 5 U.S.C. § 555(b). Notably, the statute refers to "the parties" not just to the applicant for particular agency action, and reference to "convenience and necessity of the parties" introduces further factors taking the time to complete the adjudication out of the realm of a "positive command so plainly prescribed as to be free from doubt."

Where there are no allegations of fact plausibly suggesting that the requirements for the extraordinary relief of a writ of mandamus are met, Count II fails to state a claim on which relief can be granted.

d.   Summary

The USCIS Defendants are entitled to dismissal of both of Plaintiffs' claims. Count I is dismissed as to the USCIS Defendants for lack of subject matter jurisdiction. Count II is dismissed as to the USCIS Defendants for failure to state a claim on which relief can be granted.

## C.  The Claims Against the DOS Defendants

The Court begins and ends its analysis of the claims against the DOS Defendants with the question of whether the Court has subject matter jurisdiction over those claims. Defendants assert that those claims are not ripe. *See, e.g.,* Filing 22 at 4. Notwithstanding Plaintiffs' arguments to the contrary, their claims against the DOS Defendants are not ripe.

### 1.    *The Parties' Arguments*

The DOS Defendants argue that the claims against them are not ripe for review where Plaintiffs admit that the DOS cannot schedule plaintiff Olvera's immigrant visa interview at this time. Filing 22 at 32. The DOS Defendants point out that Olvera is not eligible for a consular review until her I-601A application is adjudicated and USCIS determines that her visa case is "documentarily qualified," but neither event has occurred. Filing 22 at 32.

Plaintiffs argue that the DOS Defendants wrongly imply that the DOS is not already involved in their case. Filing 24 at 15. They argue that the DOS became involved in their case in August 2019 because the DOS implemented the requirement that USCIS must approve the I-130 before the case is moved from USCIS to the DOS. Filing 24 at 15. Plaintiffs argue that the DOS Defendants have had Plaintiffs' DS-260 immigrant visa application and I-130 approval notice but have made the decision to hold off on adjudication of the visa application until after plaintiff Olvera's I-601A Application is approved. Filing 24 at 16. Plaintiffs contend further that their claims are manageable, so they are ripe. Filing 24 at 15–16.

20

2.      *Ripeness Standards*

As the Eighth Circuit Court of Appeals has explained,

> Ripeness is a "closely related doctrine" of standing that "originates from the same Article III limitation [on subject matter jurisdiction]." *Sch. of the Ozarks, [Inc. v. Biden]*, 41 F.4th [992,] 997 [(8th Cir. 2022)] (citing *Susan B. Anthony List [v. Driehaus]*, 573 U.S. [149,] 157 n.5, 134 S.Ct. 2334 [(2014)]). The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 997–98 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). "[T]he complainant must show both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration'" "[t]o demonstrate that an alleged dispute is ripe for review." *Id.* at 998 (quoting *Abbott Lab'ys*, 387 U.S. at 149, 87 S.Ct. 1507). A case that "would not benefit from further factual development and poses a purely legal question not contingent on future possibilities ... is fit for judicial decision." *Id.*

*Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 608 (8th Cir. 2022); *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 993 (8th Cir. 2016) (explaining that "[t]he plaintiff 'must necessarily satisfy both [the 'fitness' and 'hardship'] prongs to at least a minimal degree.'" (quoting *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000)). As the Eighth Circuit has also explained,

> Fitness depends on whether a case needs further factual development. [*Pub. Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 572–73 (8th Cir. 2003)]. Hardship requires that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Id.*

*Hughes*, 840 F.3d at 992. Thus, a case is not ripe if it is dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

21

3.       *Plaintiffs' Claims Against the DOS Defendants Are Not Ripe*

On this challenge to subject matter jurisdiction, which the Court determined it would treat as "facial" above in § II.A.1., the Court must give Plaintiffs "Rule 12(b)(6) safeguards," including treating factual allegations in the Complaint as true. *See Croyle*, 908 F.3d at 380–81; *Stalley*, 509 F.3d at 521. Thus, the Court accepts as true Plaintiffs' allegation that the DOS Defendants have been on notice of plaintiff Olvera's application for a DS-260 immigrant visa since August 9, 2018, and that USCIS received her I-601A Application in November 9, 2020. *See* Filing 1 at 7–8 (¶¶ 27–28). The Court also accepts as true Plaintiffs' allegations that they have suffered hardships awaiting approval by the DOS of plaintiff Olvera's DS-260 visa application. *See* Filing 1 at 3 (¶ 8); Filing 1 at 10 (¶ 44); Filing 1 at 12 (¶ 57). Nevertheless, these allegations do not plausibly suggest that Plaintiffs' claims against the DOS Defendants are ripe because they are at best only consistent with the possibility that plaintiff Olvera's DS-260 visa application is ready for adjudication. *Stalley*, 509 F.3d at 521 (explaining that courts still "giv[e] no effect to conclusory allegations of law," and "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right."); *accord Davis*, 886 F.3d at 679 (explaining that "[i]n a facial attack, 'a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction.'" (quoting *Kerns*, 585 F.3d at 193)).

The primary fallacy in Plaintiffs' argument is that the DOS Defendants have made the decision to hold off on adjudication of plaintiff Olvera's DS-260 visa application until after her I-601A Application for a waiver is approved. Filing 24 at 16. The DOS did not impose that requirement; instead, the requirement for approval of an I-601A application before consideration of a DS-260 visa application is imposed by statute. Section 1182(a)(9)(B)(i) makes Olvera

ineligible for a visa and ineligible to be admitted to the United States without a waiver authorized in § 1182(a)(9)(B)(v). *See* 8 U.S.C. § 1182(a)(9)(B). Thus, whatever hardship Plaintiffs have suffered since the DOS Defendants had notice of Olvera's DS-260 application was not sustained as the result of the challenged official conduct of the DOS Defendants. *Hughes*, 840 F.3d at 992 (explaining the "hardship" prong of the ripeness analysis). Plaintiffs have not directly challenged § 1182(a)(9)(B) on constitutional or other grounds. To put it another way, this case is not ripe because the Court should not interfere until some effect of a decision of the DOS Defendants has been felt in a concrete way by Plaintiffs, and there is no such decision and no such effect at this time. *Religious Sisters of Mercy*, 55 F.4th at 608.

This primary fallacy in Plaintiffs' argument also demonstrates why Plaintiffs cannot satisfy the "fitness" prong of the ripeness analysis. *See id.*; *Hughes*, 840 F.3d at 992. "Fitness" depends on whether a case needs further factual development, *Hughes*, 840 F.3d at 992, to avoid premature adjudication or the courts entangling themselves in abstract disagreements over administrative policies. *Religious Sisters of Mercy*, 55 F.4th at 608. Because § 1182(a)(9)(B) requires a waiver of unlawful presence before a visa can be issued, and there has been no such waiver, the DOS Defendants cannot adjudicate plaintiff Olvera's DS-260 visa application. Further factual development is required, including whether plaintiff Olvera's I-601A application is approved. *Hughes*, 840 F.3d at 992. Such approval is entirely contingent. *Trump*, 141 S. Ct. at 535 (explaining that a case is not ripe if it is dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." (citation omitted)). For the Court to direct the DOS Defendants to adjudicate plaintiff Olvera's DS-260 application at this time would be premature and would improperly entangle the Court in abstract disagreements over

23

administrative policies not to mention legislative policies on immigration. *Religious Sisters of Mercy*, 55 F.4th at 608.

The DOS Defendants are entitled to dismissal of Plaintiffs' claims against them because those claims are not ripe.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Defendants' Motion to Dismiss, Filing 20, is granted, and the Complaint in this action is dismissed for lack of subject matter jurisdiction and failure to state a claim as set out above.

Dated this 26th day of October, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge